No. 85-146

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN RE THE PETITION OF
HENRY J. GILLHAM.

_____

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Petitioner:

Henry J. Gillham, pro se, Deer Lodge, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
William A. Douglas, County Attorney, Libby, Montana
Church, Harris, Johnson & Williams; Cresap S.
McCracken, Great Falls, Montana
Kerry N. Newcomer, Missoula, Montana

_____

Submitted: September 5, 1985
Decided: October 3, 1985

Filed:  OCT 3 1985

Ethel M. Harrison
_____
Clerk

OPINION AND ORDER

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Henry J. Gillham seeks post-conviction relief from a judgment of conviction of attempted deliberate homicide entered following a jury trial in the District Court, Nineteenth Judicial District, Lincoln County, Honorable Robert M. Holter presiding. The District Court imposed a sentence of 60 years for the attempted deliberate homicide, plus an additional 10 years pursuant to § 46-18-221, MCA, for the use of a destructive device. The court designated the petitioner a dangerous offender for the purposes of parole. The final judgment of conviction and sentence was entered on May 17, 1982.

Gillham appealed his conviction to this Court. He was represented by attorney Kerry Newcomer. On appeal, Gillham raised the following issues: improperly admitted evidence of "other crimes"; improper prosecutorial argument to the jury; juror misconduct; insufficient evidence to support the conviction; and cumulative error. This Court affirmed the petitioner's conviction in its opinion dated October 6, 1983. State v. Gillham (Mont. 1983), 670 P.2d 544, 40 St.Rep. 1576.

Gillham filed his petition for post-conviction relief in this Court on April 1, 1985 and raised four grounds for relief: (1) improper jury instructions; (2) illegal search and seizure; (3) ineffective assistance of counsel; and (4) denial of right to confrontation. The State denies the allegations offered in support of these grounds and opposes Gillham's petition.

In the course of the proceedings before this Court, because Gillham alleged that he was denied effective assistance of counsel in his trial, the Attorney General requested of his counsel, Kerry Newcomer, information respecting the allegations made by Gillham in his petition. Newcomer declined to give such information. He filed an affidavit in which he stated that he was appointed to represent Gillham in December of 1981, approximately 1 month after Gillham had been arrested. Prior to that time Gillham had been represented by private counsel. Newcomer represented him as a part of his duties as a public defender in Lincoln County, Montana. Newcomer further stated in his affidavit that he was reluctant to assume or infer a waiver of the attorney-client privilege by reason of the allegations in Gillham's petitition for post-conviction relief. For that reason, and not as an obstacle to the proceedings before this Court, Newcomer wanted assurances that Gillham made a knowing and intelligent waiver of the attorney-client privilege.

On June 6, 1985, we entered an order stating that Newcomer, as an officer of this Court, is obliged to assist the Court in the administration of justice and that therefore he should respond by affidavit or other sworn testimony to admit, deny, or qualify the allegations of fact made by Gillham in his petition. We provided that if making such response required him to reveal confidential information from Gillham, he should nonetheless make such response, revealing only so much confidential information as was necessary to properly respond to Gillham's allegations. In that order, we stated that the effective administration of justice and the integrity of the fact finding system in criminal matters were more important than the privilege granted to the

attorney-client relationship. We further stated that a petition such as Gillham's which claims that his conviction is the result of inadequate assistance of counsel attacks the system of judicial administration and the fairness of our trial procedures and that to insure convicted persons of evenhanded justice in criminal adjudications, the Court and the State must have access to the truth of the allegations respecting the adequacy of counsel's representation. We held, therefore, that Gillham's actual consent to, or his comprehension of the waiver of the attorney-client privilege were irrelevant when a response was necessary from the attorney that had represented the defendant in the criminal case.

Newcomer did respond to the allegations of Gillham by filing his sworn affidavit and thereafter, the State filed its response to Gillham's petition for post-conviction relief.

The cause is now ripe for consideration by us, and having examined the contentions of Gillham, and responses of the State thereto, we have determined that Gillham's grounds which he claims entitle him to post-conviction relief are without substance. We therefore deny his petition.

1. FAILURE TO GIVE A MANDATORY JURY INSTRUCTION

Section 26-1-303, MCA, provides that the jury is to be instructed by the court on all proper occasions that, _inter alia_, "the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust."

We will not burden this opinion with a full recitation of the facts constituting the crime for which Gillham was convicted. Such a recitation may be found in State v. Gillham (Mont. 1983), 670 P.2d 544, 40 St.Rep. 1576. It is

enough to say here that Linda Weitz and Mark Darby both testified that they met Gillham in September of 1981 when he showed them a blasting cap and wires and claimed to have dynamite in his truck for the purpose of "blowing up" Jean Nordahl on the instigation of Nordahl's wife, Carolyn, for a commission of $5,000 to $10,000. Weitz and Darby testified that they went with Gillham late on November 12, 1981, to Nordahl's shop. Darby stood guard outside while Gillham went inside for twenty minutes to install sticks of dynamite under the driver's seat of a truck, the dynamite wired so that it would explode within a few seconds after the truck headlights were turned on. Weitz and Darby testified that the next day Gillham told them that "[t]he damned thing didn't go off" and Gillham was worried about whether he had left fingerprints or other traces which could be related to him. Out of fear of Gillham, Weitz and Darby reported the incident to the sheriff's office.

At the time of settling instructions during Gillham's trial, his counsel, Newcomer, had prepared an instruction embodying the mandatory statutory provision set forth above. He withdrew the mandatory accomplice instruction, however, during the discussion with the trial court. In his response to the Attorney General's request for the purposes of this proceeding, Newcomer in his affidavits stated that he withdrew the offering instruction because it was not applicable: Gillham's theory of defense was that Weitz and Darby had completely fabricated their story and Gillham never planted such a bomb.

Two legal issues arise on Gillham's contentions respecting the withdrawal of the mandatory jury instruction: (1) Did the omission to instruct the jury that the testimony

- 5 -

of an accomplice is to be viewed with distrust vitiate his conviction? (2) Did the withdrawal of the instruction by Newcomer constitute ineffective assistance of counsel?

To reverse a conviction upon the ground that the defense attorney's performance was deficient, the defendant must show (1) counsel was not functioning so as to preserve the defendant's Sixth Amendment rights and (2) the deficient performance prejudiced the defense. Strickland v. Washington (1984), ___ U.S. ___, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Defendant must establish a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, ___ U.S. ___, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. We have adopted the Strickland standards. State v. Boyer (1985), 695 P.2d 829, 831, 42 St.Rep. 247, 250.

Although Newcomer states that Gillham's denial of any complicity in the crime made it inconsistent for him to offer the accomplice instruction, it is clear from the language of the statute, and from the circumstances here, that the trial court should have instructed the jury that the testimony of the purported accomplices, Weitz and Darby, was to be viewed with distrust. Their testimony strengthened the State's case, though not the only evidence of Gillham's guilt. The trial court did, however, instruct the jury in its instruction no. 16:

> You may not find Henry Gillham guilty on the
> testimony of persons responsible or legally
> accountable for the same offense, unless their
> testimony is corroborated by other evidence which
> in itself and without the aid of the testimony of
> those responsible or legally accountable for the
> same offense tends to connect Henry Gillham with a

commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

A reading of our opinion in State v. Gillham, 670 P.2d 544, 40 St.Rep. 1576 will show there was much corroborative evidence to connect Gillham to the commission of this offense. In fact we stated, on the issue of the sufficiency of the evidence, that "the case against him is overwhelming." Id. at 551, 40 St.Rep. at 1584. Our confidence in the outcome is not undermined by any reasonable probability that the failure of the Court to give the mandatory accomplice instruction would have brought about a different result in Gillham's trial. Gillham's contentions on the mandatory instruction are therefore insufficient to cause a reversal of his conviction.

We answer the legal issues raised by this contention by stating that the failure of the District Court to give the mandatory jury instruction was at most harmless error and does not serve to vitiate the conviction; and that the withdrawal of such an instruction by Gillham's attorney does not meet the requirements to show ineffective assistance of counsel.

## 2. ILLEGAL SEARCH AND SEIZURE

Gillham's claim of illegal search and seizure relates to a .22 caliber pistol that the evidence showed had been given to Gillham by Carolyn Nordahl to shoot Jean Nordahl on the evening of November 12, 1981. The shooting did not take place, and the gun was returned to Carolyn, who kept it with another pistol on a wall in the Nordahl home. Marvin Miller testified that after Gillham was arrested for the dynamite attempt, he had gone to the Nordahl home, and that Carolyn had given him the .22 pistol because she did not want it

found after Gillham's arrest. He turned it over to a deputy sheriff. The evidence later indicated that Miller had talked to the deputy before going to the Nordahl home, and apparently promised that he would get the gun for the deputy.

Gillham charges that the seizure was illegal, that the pistol should have been suppressed as evidence, and that his counsel was negligent in not moving to suppress the pistol at the time of the trial, nor making it a subject for appeal.

When the matter first came up during the trial, Newcomer was unaware that the deputy sheriff had first talked to Miller about the gun.

There is no need to cite authority because clearly there was not an illegal search or seizure here. The pistol did not belong to Gillham; the pistol was not taken from his home; he had no right to the possession of the pistol. A motion to suppress would have been futile.

With respect to the appeal, Newcomer states in his affidavit responding to Gillham that he and Gillham agreed that the issue would not be raised in appeal because it was Newcomer's legal advice to Gillham that it was not wise to "shotgun" issues before the Supreme Court, but to pick out the issues in which they had the strongest chance of reversal. It need only be said further that the presence or lack of presence of a gun in the testimony would not make a difference in the outcome on appeal for his conviction would have still been affirmed.

### 3. IMPEACHMENT OF WEITZ AND DARBY

Gillham contends that Newcomer as his counsel should have attacked more vigorously the testimony of Weitz and Darby, and impeached them. Newcomer refutes Gillham's contention on this point by citing us to the pages of the

transcript where he cross-examined both Weitz and Darby. Newcomer contends that because defendant denied absolutely any involvement in the dynamite attempt counsel had no other testimony which could be produced contrary to that of Darby and Weitz. His only recourse was to point out inconsistencies between their testimonies on prior statements, with the object of impeaching them by showing bias or prejudice.

Under the circumstances, we find that Newcomer did what was possible under the circumstances where his client denied complicity in the crime, and there were no other witnesses to refute the testimony given by those testifying. There is no basis for Gillham's claim of ineffective assistance of counsel.

## 4. RIGHT OF CONFRONTATION

Gillham wore a hearing aid during the trial, because of his hearing disability. He contends in his petition that Newcomer and an assistant James Park Taylor instructed Gillham to disable or turn off his hearing aid. As a result Gillham claims he was unable to hear the proceedings of trial and that in place of being able to hear the proceedings they had arranged for Gillham to answer "yes" or "no" with hand signals.

Newcomer's affidavit states that prior to trial he spoke to Gillham at length about his ability to hear. Gillham informed Newcomer that the hearing aid was sufficient but that it needed a new batteries. The assistant obtained batteries for Gillham and they were installed in his hearing aid. During the trial the hearing aid was turned up to such an extent that it squealed from feedback. Several times counsel requested Gillham to turn down his hearing aid during

the trial. During the trial he told counsel that he could hear sufficiently well and understood the proceedings. Newcomer also believed that the petitioner heard the proceedings because from time to time in response to testimony against him he would become excited and would comment that such a testimony was a lie or was incorrect in some respect. Newcomer also asked petitioner to use a note pad and pen to write out his questions so that he would be less disruptive during the trial. Newcomer further states that the allegation for using tapping on the table or other hand signals is completely false.

We reject Gillham's contention that he was denied right to confront his witnesses because of his hearing deficiency.

The foregoing are the principal issues raised by Gillham in connection with his petition for post-conviction relief. Gillham also alleges that Newcomer did not give Gillham an opportunity to decide in an intelligent manner whether or not he should testify in his own behalf. In responding to this allegation Newcomer points out that there was absolute inconsistency between Gillham's version of what had occurred and what was testified to by other witnesses. Gillham had a previous criminal record, and during the time of the bombing attempt, he was engaged in illegal activities relating to alcohol, tobacco, and firearms. Moreover, even to Newcomer, Gillham was giving differing versions of the events surrounding the bombing attempt. It was counsel's opinion that if Gillham testified, he would seriously damage his defense.

We have stated above the duty of counsel and the standard to which one is held in counselling defendants in

criminal cases. We see no breach of duty on the part of Newcomer.

ACCORDINGLY, IT IS ORDERED:

1. The petition of Henry J. Gillham for post-conviction relief is hereby denied.

2. The Clerk of this Court shall send copies of this opinion and order by ordinary mail to the defendant, to Kerry N. Newcomer, to the Attorney General, and to the Clerk of the District Court of Lincoln, Montana.

DATED this 3rd day of October, 1985.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices